[Crim. No. 8777. Third Dist. June 7, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRIS GORDON SUNDLEE, Defendant and Appellant.

478

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe and Nancy L. Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

Dennis M. Latimer and Douglas McClellan Bussey for Defendant and Appellant.

**OPINION**

**FRIEDMAN, Acting P. J.**—Defendant appeals after a jury found him guilty of arson. (Pen. Code, § 448a.)

Fires had been breaking out in the neighborhood of a dam construction site in wooded foothills. Suspicion fell upon defendant, who was employed as a night watchman on the construction job. Defendant had a pickup truck. Thirteen employees of the State Division of Forestry formed a surveillance team in order to watch defendant. They were equipped with walkie-talkie radios; their communications were recorded on cassette tapes. On the night in question members of the team were concealed in the vicinity of the construction yard. Moonlight provided visibility. They saw a truck drive into the yard. They knew it was defendant's truck. The driver left the truck and walked toward a 6- by 8-foot shed, where he left the observers' range of vision. About eight minutes later he reappeared and returned to the truck, which was rapidly driven (with headlights off) to a nearby location. The driver got out and walked into the brush, where he was lost to view. Soon there was a loud sharp report and the shed burst into flames. The person emerged from the brush, entered the truck and drove it rapidly past the construction yard. Soon defendant arrived at a nearby home, asked if he could use the phone to report the fire and did so. At the trial he denied setting the fire.

I

The members of the surveillance team had exchanged comments and observations by radio as they watched defendant on the night in question. Later their recorded conversations were transcribed. Included in the conversations were descriptions of the suspect's movements and declarations identifying defendant as the person under observation. The conversations also included statements after the fire that team members

had defendant in sight; that they were pursuing him; that they had caught him.

At the outset of the trial the prosecutor laid a foundation and offered in evidence the tape recording and the transcript of the surveillance team's radio conversations. Upon learning that defendant's trial counsel had no objection, the trial court admitted the offered evidence. The tape was played to the jury in open court and each juror was given a copy of the transcript. After the tape had been played, a number of the surveillance team members testified.

On appeal defendant characterizes the tape recording and transcript as hearsay and his trial attorney's failure to object as inadequate representation. ■ It is an attorney's duty to investigate carefully all factual and legal defenses available to the defendant; if his failure results in loss of a crucial defense, the defendant has not had the assistance to which he was entitled. (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) ■ On appeal, the defense bears the burden of establishing the trial attorney's ineffectiveness as a matter of demonstrable reality. (*People* v. *Jenkins,* 13 Cal.3d 749, 753 [119 Cal.Rptr. 705, 532 P.2d 857].) ■ When an attorney fails to object to inadmissible, damaging evidence, the reviewing court is called upon to sift the record to ascertain the relative incriminatory effect of the failure to object. (*People* v. *Coffman,* 2 Cal.App.3d 681, 690 [82 Cal.Rptr. 782].)

■ Subject to recognized exceptions, the hearsay rule bars out-of-court declarations of nonparties which are offered to prove the truth of the matter stated. (Evid. Code, §§ 1200, 1220.) The Attorney General contends that the tape recording and transcript of the surveillance team's conversations were not offered for a hearsay purpose, but rather to "set the stage" for the in-court testimony of members of the team. To the contrary, the recorded out-of-court conversations were aimed at convincing the jury that the events described in the conversations had in fact taken place. In statutory parlance, they were offered "to prove the truth" of the matter stated. (Evid. Code, § 1200.)

No California decision has inquired into the hearsay character of electronic recordings of nonparties' extrajudicial statements. A number of decisions treat tangential problems. A body of case law establishes the admissibility of the recorded declarations of defendants in criminal cases. (See, e.g., *People* v. *Morse* (1964) 60 Cal.2d 631, 655 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]; *People* v. *McShann* (1960) 177

Cal.App.2d 195 [2 Cal.Rptr. 71]; *People* v. *Fratianno* (1955) 132 Cal.App.2d 610, 628-629 [282 P.2d 1002]; *People* v. *Hayes* (1937) 21 Cal.App.2d 320 [71 P.2d 321].) These decisions are not significant here; if hearsay, the recorded statement of the accused is admissible as an exception to the hearsay rule. (Evid. Code, § 1220.)[1]

Another decision upholds admissibility of a videotaped testimony of a terminally ill witness at the defendant's preliminary hearing (*People* v. *Moran* (1974) 39 Cal.App.3d 398, 406-411 [114 Cal.Rptr. 413]). Here too, the availability of a statutory exception (Evid. Code, §§ 1290-1291) spared the court from inquiry into the hearsay status of the videotape's contents.

■ Section 250 of the Evidence Code includes sound recordings within the category of writings. (*People* v. *Marcus* (1973) 31 Cal.App.3d 367, 370 [107 Cal.Rptr. 264, 58 A.L.R.3d 594]; *People* v. *Moran, supra,* 39 Cal.App.3d 398, 407 [114 Cal.Rptr. 413].) The hearsay rule, of course, embraces written as well as oral expressions. (See com. of Senate Com. on Judiciary foll. Evid. Code, § 1200, 29B West's Anno. Evid. Code (1966 ed.) pp. 34-36; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42-43 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) A number of American jurisdictions characterize recordings of nonparty declarations as inadmissible hearsay. (*McIntyre* v. *Reynolds Metals Co.* (5th Cir. 1972) 468 F.2d 1092, 1094; *United States* v. *Cianchetti* (2d Cir. 1963) 315 F.2d 584, 589-590; *Pitts* v. *United States* (Fla. App. 1975) 307 So.2d 473; *State* v. *Hamilton* (La. 1974) 302 So.2d 267; *Commonwealth* v. *Paskings* (1972) 447 Pa. 350 [290 A.2d 82]; Jones on Evidence (6th ed. 1972) § 15:15, p. 44; Note, 58 A.L.R.3d 598, 611-612.)

The last-cited decisions are impregnably correct. An electronic voice recording has no more sanctity than the oral testimony of a witness recounting the same extrajudicial declarations. ■ In their recorded conversation the members of the surveillance team were not under oath and could not be tested by cross-examination. The recording could not make their inadmissible statements admissible. The tape recording was "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200.)

---

[1] A text, 1 Underhill's Criminal Evidence (6th ed.) section 121, page 325, erroneously cites *People* v. *Hayes, supra,* as authority for the unqualified statement that introduction of a recording does not violate the hearsay rule.

In this case the transcript of the recording shared the latter's hearsay status. Had defendant's trial attorney made a seasonable objection, the judge would have been required to sustain it.

## II

John Tibbetts, a member of the surveillance team and an expert on arson, was at the scene of the burning shed within seven minutes after the fire broke out. The entire interior of the shed was engulfed in flames. In Tibbetts' opinion the fire had been artificially set; had started at the center of the floor; there had been no electric wiring in the building. Tibbetts found no evidence of flammable liquid. Over defense objection, Tibbetts was permitted to describe a number of time-delay devices used to start fires. He testified that when the fire had burnt out, he had examined the debris. He found no remains of a time-delay device. Nevertheless, in his opinion, the fire had been started by use of an accelerant and some kind of sophisticated time device.

Defendant complains that Tibbetts should have been the recipient of hypothetical questioning; in any event, that his testimony describing time devices was speculative, more prejudicial than probative.

" '[A]n expert must base his opinion either on facts personally observed or on hypotheses that find support in the evidence.' " (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at p. 44.) Tibbetts had drawn his conclusions from personal observation. Thus the prosecutor was not required to proceed by hypothetical questions.

The opinion of an expert is admissible when based upon his special knowledge and upon matter perceived by him or made known to him at the hearing "that is of a type that reasonably may be relied upon by an expert in forming an opinion . . . ." (Evid. Code, § 801.) An expert may not base his opinion on conjecture (*Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77, 83 [107 Cal.Rptr. 727]) but may identify a causative force by a process of eliminating other causes (*George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 844 [205 P.2d 1037]). In arson cases an expert may draw an inference and testify to his opinion that the fire had been ignited by flammable liquid, even though he has found no residue, taste or smell of it. (*People* v. *Lockhart* (1962) 200 Cal.App.2d 862, 872 [19 Cal.Rptr. 719]; *People* v. *Alexander* (1960) 182 Cal.App.2d 281, 285 [6 Cal.Rptr. 153].) The strength of his assumptions

affects the weight rather than the admissibility of his opinion. (See *People* v. *Cantrell* (1973) 8 Cal.3d 672, 688 [105 Cal.Rptr. 792, 504 P.2d 1256]; *Pfingsten* v. *Westenhaver* (1952) 39 Cal.2d 12, 20 [244 P.2d 395].)

■ In this case a delay occurred between the time the suspect left the shed area and the outbreak of the fire; the fire had started in the center of the floor of the unwired shed; it had commenced with an explosion and a sudden burst of flame. These circumstances supplied the basis for the witness' inference that it had been artificially ignited by a time-delay device which had been consumed in the fire. In order to clarify what a time-delay device might be, the expert could properly describe specimen devices to the jury. The court did not err in permitting that description.

### III

■ The prosecutor called seven members of the fire suppression team as witnesses. Three of these had been concealed where they could watch the construction yard. Unfortunately, the prosecutor utilized the inadmissible recording and transcript as his evidentiary *piece de resistance.* The flesh-and-blood witnesses supplied only isolated pieces of supplemental testimony. Relying on the inadmissible hearsay, the prosecution failed to produce substantial, admissible evidence that defendant had set the fire. Each juror had a transcript of the inadmissible radio conversations and took it into the jury room, where it may have played a powerful and influential role, dwarfing the admissible eyewitness testimony.

In sum, the inadmissible hearsay had an incriminatory impact stronger than the totality of admissible evidence. ■ The attorney's failure to object opened the door to seriously damaging, inadmissible evidence which played a major role in the verdict of guilt. The defense has met its burden of establishing inadequate representation at a crucial juncture and as a demonstrable reality.

Judgment reversed.

Regan, J., and Reynoso, J., concurred.