[Crim. No. 22940. Sept. 10, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRICK TED MARTINEZ, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Tom Stanley, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer,

Assistant Attorney General, Steven V. Adler, Frederick R. Millar, Jr., and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**BROUSSARD, J.**—Defendant was convicted of second degree burglary and placed on probation. On appeal, he argues that the trial court erred in denying his motion for new trial.

On the night of April 23, 1980, someone broke into the Omega Tool Company and took tools and equipment valued at more than $8,000. (The size and weight of the stolen items suggests that more than one person was involved.) A drill press weighing 150 to 175 pounds, taken from the rear building, was found outside near a hole cut in the fence surrounding the plant. Defendant's palm print was found on the drill press.

William Gerhis, the plant maintenance man, had been engaged in repainting Omega's equipment for several weeks prior to the date of the burglary. Gerhis testified that on April 23 he arrived at 4 p.m., cleaned the drill press with an industrial solvent, dried it with an air hose, and painted it. When Gerhis left about 8 or 8:30 p.m. that evening, the building was locked and the drill press inside. On cross-examination, Gerhis acknowledged that although he kept time records which would show when he painted equipment, the records do not indicate which machine was painted each day. Gerhis did not tell the police the drill press had been freshly painted until May 13, three weeks after the burglary.

Defendant, a former employee of Omega, was employed as a welder and forklift operator by General Seating Company, located across the street from Omega. Defendant would frequently visit the Omega plant, both to pick up and deliver items for General Seating and to talk to friends who continued to work there. During such trips he sometimes touched or leaned on the machines. He occasionally used Omega machines to make or repair items for General Seating, and in fact used the drill press about two weeks before the burglary.

Defendant testified that during the week before the burglary, he went to the Omega plant two or three times. On April 22, the day before the burglary, he went there to borrow a construction bar. He entered the rear building, where the drill press is located, and spoke to Fred Torrez, the

foreman. Defendant did not recall touching the drill press on that occasion.

In sum, the palm print on the drill press was undoubtedly that of defendant, but there were numerous occasions during the two weeks preceding the burglary when defendant might have innocently touched the machine. The prosecution case consequently rested upon the testimony of Gerhis that he repainted the machine between 4 and 8 p.m. on April 23, and the necessary inference that defendant must have touched the machine during the night of the burglary.

Defendant testified to explain his activities on the night of April 23. He and his live-in companion, Vanessa G., invited friends and relatives to their residence for dinner and cards. At one point in the evening defendant, Vanessa and Peter Jimenez went to the liquor store but returned after about 15 minutes. Apart from that excursion, defendant remained at home. The guests left by 2:30 or 3 a.m., and he and Vanessa went to sleep. Defendant reported for work at General Seating the next morning. Defendant's account was corroborated by Vanessa and the guests except for the period from roughly 3 to 7 a.m., when the guests had departed and Vanessa was asleep.

After a three-day trial, the case was submitted to the jury. The jury requested rereading of the testimony of defendant and Gerhis, and at one point sent a note to the judge asking him to explain "1. Time limit the jurors may be involved in reaching a verdict and 2. In the event a verdict can not be reached, what is our procedure?" After one and a half days of deliberation, however, the jury returned a verdict finding defendant guilty of second degree burglary.

Defense counsel moved for a new trial on the ground of newly discovered evidence. (See Pen. Code, § 1181, subd. 8.)[1] He supported that motion with affidavits from Fred Torrez, the former foreman at Omega Tool Company and Ray Terrell, a defense investigator. Torrez declared that he was foreman at Omega on the date of the burglary, had the responsibility of setting up the machines for work each morning, and was the person who discovered the missing drill press the morning after the burglary. He then stated that: "I specifically recall that at least on the day or two preceding the burglary on April 23rd that the drill press had been recently painted. I do not recall how long before that time it had been painted but it was, to the best of my recollection, within two weeks before the burglary. When I located the drill

---

[1]Section 1181, subdivision 8, authorizes the trial court to grant a new trial "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. . . ."

press the morning following the burglary, I noted that its surface was in the same condition as it had been on the 23rd of April. I am certain that the press had not been painted in the afternoon or evening hours of April 23rd. I have had experience in working on machines recently painted and have found that it takes at least ten to twelve hours for this paint to dry."

Terrell stated that he went to Omega Tool to investigate the burglary, but was told by Al Nimmo, the manager, that Nimmo would give him no information to help defendant.

At the hearing on the motion for new trial, Torrez testified in accord with his affidavit. Torrez explained his failure to come forward earlier, testifying that he did not learn that the date of painting of the drill press was crucial to the case until after defendant's conviction. He said also that he was employed by Nimmo until February of 1981, a month after defendant's trial, and feared that he would jeopardize his job if he testified for defendant.

The trial court denied the motion for new trial on the ground that the defense did not use due diligence in locating Torrez as a witness. The judge went on to say that lack of diligence "is not the only ground: the Court is also not convinced that the jury would have reached any different verdict even if that evidence had come forth at the time of trial. While . . . there was testimony that the machine had been painted the night before, therefore the print had to be put on later than that, the Court is not convinced that that was all that critical; the jury could very well have found, and probably would have found, that the print was put on there that night, even without that testimony."

The standard of review of an order denying a motion for a new trial based on newly discovered evidence was established by this court in 1887: "To entitle a party to a new trial on the ground of newly discovered evidence, it must appear,—'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.' . . . [¶] 'Applications on this ground are addressed to the discretion of the court below, and the action of the court below will not be disturbed except for an abuse of discretion, . . .'" (*People* v. *Sutton* (1887) 73 Cal. 243, 247-248 [15 P. 86], quoting 1 Hayne on New Trial and Appeal, §§ 87-88.) Subsequent cases reiterate this standard unchanged (*People* v. *McGarry* (1954) 42 Cal.2d 429, 433 [267 P.2d 254]; *People* v. *Beard* (1956) 46 Cal.2d 278, 281 [294 P.2d 29]; *People* v. *Williams* (1962) 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353];

*People* v. *McDaniel* (1976) 16 Cal.3d 156, 178 [127 Cal.Rptr. 467, 545 P.2d 843].)[2]

The trial court denied defendant's motion for failure to meet the second and third criteria: that the evidence be such as to render a different result probable at retrial, and that it could not have been discovered and produced at trial through exercise of reasonable diligence. We consider each basis in turn, looking first to the question whether it is reasonably probable that the testimony of Torrez, had it been presented to the jury, would have affected the outcome of the trial.

The prosecution's case rested entirely on the palm print. No other evidence connected defendant to the burglary. He was not seen at the site of the crime on the night of the burglary, and those witnesses who saw defendant that night testified that, apart from a brief trip to the liquor store, defendant was at home. No property removed from the premises has been recovered or seen in defendant's possession. Defendant did not confess, and his conduct is fully consistent with innocence.

A plausible, innocent explanation for defendant's palm print on the drill press would expose a serious gap in the prosecution's proof.[3] Defendant's frequent visits to Omega supplied such an explanation, but Gerhis' testimony that he repainted the drill press after defendant's last visit refuted that explanation.

The fragile structure of the prosecution case clearly troubled the jury. They deliberated for a day and a half—a relatively long time for a three-

---

[2]Witkin observes that "[i]t is frequently declared that the motion on this ground [newly discovered evidence] is viewed with 'disfavor' and even 'distrust' and 'suspicion.' [Citing cases.] [¶] This disparagement is questionable; fair consideration of competent new evidence tending to negative guilt is essential to any enlightened system of criminal justice. And the disfavor notion seems merely to be an unfortunate way of describing the necessary broad discretion in the trial judge to deny the motion where no sufficient showing is made of competency, materiality and diligence." (Witkin Cal. Criminal Procedure (1963) pp. 568-569; see *People* v. *Clauson* (1969) 275 Cal.App.2d 699, 703-704 [80 Cal.Rptr. 475].)

[3]In *People* v. *Redmond* (1969) 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321], a defendant was convicted of burglary on the basis of fingerprints found near the bedroom window where the burglar had broken into the house. In holding that the trial court should have granted a new trial on the ground of insufficiency of the evidence, we said: "The fingerprint evidence cannot be considered substantially incriminating in the circumstances of the present case. The evidence is clear that defendant was in the house lawfully for a substantial period of time on the evening preceding the crime. The prosecution evidence places him there for three quarters of an hour. That evidence does not show where the conversations took place. Entirely consistent with the prosecution case the entire conversation could have occurred in the bedroom, and, if so, the presence of the fingerprint was not substantially incriminating. . . . Nor can the placement of the fingerprint on the sill be viewed as a substantially incriminating factor. There is nothing in the record to show that the fingerprint was in a place where a visitor to the house would not have left it." (Pp. 756-757.)

day trial and a one-count information, requested rereading of the testimony of defendant and Gerhis, and asked the judge to explain the procedure if they could not reach a verdict.

Numerous cases hold that a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant. (*People* v. *Williams, supra,* 57 Cal.2d 263, 274-275; *People* v. *Cooper* (1979) 95 Cal.App.3d 844, 852 [157 Cal.Rptr. 348]; *People* v. *Gilbert* (1944) 62 Cal.App.2d 933, 938 [145 P.2d 924]; see *People* v. *Randle* (1982) 130 Cal.App.3d 286, 293-294 [181 Cal.Rptr. 745].) The proffered testimony of Torrez that the drill press was not painted the afternoon before the burglary meets this criterion, and reopens the critical gap in the prosecution's chain of proof. If the jurors even found a reasonable possibility that Torrez' testimony was true, it is unlikely that they would find defendant's guilt proved beyond a reasonable doubt.[4]

The trial court, in denying the motion for new trial, reasoned that the testimony concerning the repainting of the drill press was not "all that critical; the jury could very well have found, and probably would have found, that the print was put on there that night, even without the testimony." It is true that even if defendant had touched the drill press during his earlier visits to Omega, the particular palm print could have been placed during the burglary. The task of the jury, however, is to determine whether defendant has been proved guilty beyond a reasonable doubt. (Pen. Code, § 1096.) Even if the jurors thought it more probable than not that the palm print was placed on the night of the burglary, if there is a credible alternative explanation for the print a reasonable doubt would remain.

The Attorney General recognizes that the date when the drill press was repainted is crucial, but argues that the jury would probably believe Gerhis on the matter instead of Torrez. He points out that Gerhis was the man who actually repainted the machine, and that his report to the police, although made about three weeks after the burglary, was at least more contemporaneous than Torrez' posttrial statement.

The problem with this reasoning, like that of the trial court, is that it overlooks the burden of proof. To acquit defendant, the jury need not find Torrez' recollection accurate and Gerhis' inaccurate. It need only decide that Torrez' testimony raised a reasonable doubt as to the time when the

---

[4]At oral argument the Attorney General argued that if Torrez had been called to testify at trial, when he was still employed by Nimmo, Torrez might have shaded his testimony to make it less favorable to defendant and more agreeable to his employer. The argument is sheer speculation. Torrez testified at the motion for new trial, and was subject to cross-examination; nothing in the record shows that he would have testified less candidly at trial.

drill press was repainted, and thus a reasonable doubt as to defendant's guilt. In our opinion, it is sufficiently likely that the jury would so find that we cannot uphold the denial of defendant's motion on the theory that the evidence in question would not affect the outcome of the case.

We turn to the question whether to sustain the ruling below on the alternative ground that the defense failed to use reasonable diligence to discover and produce the evidence at trial. The record establishes that Torrez was not merely one of several employees of Omega Tool Company; he was the foreman, the man who set up machines, and, most important, the man who spoke to defendant in the drill press room the day before the burglary.[5] It should have been apparent that he might have information critical to the defense of the case.

The defense investigator averred that Nimmo, manager and part owner of the company, refused to help defendant. The affidavit did not state that Nimmo prevented the investigator from interviewing Omega employees. Even if the investigator was unable to contact witnesses on the company premises, surely some effort should have been made to reach Torrez at some other location. (We note that defendant himself was free on bail pending trial and continued to visit Omega on business for General Seating, and might have been able to arrange a meeting.)

Defendant also argues that Torrez would not have been willing to testify until after he left employment with Omega, which occurred a few weeks after defendant's trial. He cites *People* v. *Hairgrove* (1971) 18 Cal.App.3d 606 [96 Cal.Rptr. 142], in which a defendant moved for a new trial on the ground that one Spasbo had confessed to the crime for which defendant was convicted. The trial court denied the motion on the ground that defendant had been told before trial that Spasbo was guilty, and should have subpoenaed Spasbo at trial. Reversing the trial court ruling, the Court of Appeal noted that before defendant's trial Spasbo consistently denied guilt, and concluded, "We do not see how greater diligence before trial by defendant or his counsel would have altered matters to defendant's advantage, and accordingly we do not believe a denial of the motion on the ground of lack of diligence was proper." (18 Cal.App. 3d at p. 610.)

It may be that Torrez was as unavailable a witness as Spasbo, but the testimony at the new trial hearing did not establish that fact. Torrez testified that had he known he was in a position to give testimony favorable to defendant, he would have been fearful of his job security: "I just didn't

---

[5]Torrez was also the person who discovered the stolen drill press the morning after the burglary, but it is not clear whether defendant knew that fact at the date of trial.

want to get involved, you know, because I didn't want to jeopardize my job or my position." This testimony does not demonstrate that Torrez would have been unwilling to talk to defendant, counsel, or defense investigators, or that he would not appear and testify truthfully in response to a subpoena. On the record before us, the trial court could reasonably find that counsel failed to use reasonable diligence in obtaining Torrez' testimony.[6]

We do not believe, however, that this lack of diligence is a sufficient basis for denial of defendant's motion. ■ The requirement of diligence serves "a public policy which demands that a litigant exhaust every reasonable effort to produce at his trial all existing evidence in his own behalf, to the end that the litigation may be concluded." (*People* v. *Clauson, supra,* 275 Cal.App.2d 699, 704; see *People* v. *Williams, supra,* 57 Cal.2d 263, 274.) That policy, however, itself serves a more fundamental purpose—the determination of guilt and innocence. Loyal to that higher purpose, some California cases suggest that the standard of diligence may be relaxed when the newly discovered evidence would probably lead to a different result on retrial.[7] (See *People* v. *Williams, supra,* 57 Cal.2d 263, 272-275; *People* v. *Love* (1959) 51 Cal.2d 751, 757 [336 P.2d 169]; *People* v. *Randle, supra,* 130 Cal.App.3d 286, 293; *People* v. *Gilbert, supra,* 62 Cal.App.2d 933, 937-938.) On the other hand, we have found none which declare that although newly discovered evidence shows the defendant was probably innocent, he must remain convicted because counsel failed to use diligence to discover the evidence.

■ Once a trial court determines that a "defendant did not have a 'fair trial on the merits, and that by reason of the newly discovered evidence the result could reasonably and probably be different on a retrial,'" (*People* v. *Williams, supra,* 57 Cal.2d 263, 275), it should not seek to sustain an erroneous judgment imposing criminal penalties on the defendant as a way of punishing defense counsel's lack of diligence.[8] In many cases, as defendant points out, proof of counsel's lack of diligence to discover evidence will demonstrate that counsel was constitutionally inadequate under the standards

---

[6]This court has declined to establish a test to measure reasonable diligence. Instead, in *People* v. *Williams, supra,* 57 Cal.2d 263, 273, we said that "The term 'diligence' is 'incapable of exact definition because it is a relative term' [citation] and the 'diligence' of defendant in marshaling his evidence for the trial must be determined in the light of the 'peculiar circumstances' involved."

[7]The Fifth Circuit, in *Ferrell* v. *Trailmobile, Inc.* (5th Cir. 1955) 223 F.2d 697, 698, held that when new evidence shows that judgment must "be set aside to prevent a manifest miscarriage of justice. . ., the ends of justice may require granting a new trial even though proper diligence was not used to secure such evidence for use at trial."

[8]We distinguish those cases in which the lack of diligence is that of the defendant himself, as where the defendant knows of a witness but does not inform his counsel. (See *People* v. *Greenwood* (1957) 47 Cal.2d 819, 822 [306 P.2d 427] and cases there cited.)

established in *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1] and *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144]. In such cases a new trial would be required under article I, section 15 of the California Constitution. The focus of the trial court, however, should be on the significance and impact of the newly discovered evidence, not upon the failings of counsel or whether counsel's lack of diligence was so unjustifiable that it fell below constitutional standards. Counsel who believes in good faith that he used due diligence cannot reasonably be expected to argue his own ineffectiveness; his client should not pay a penalty because of the attorney's unwillingness to assert his own incompetence. If consideration of the newly discovered evidence is essential to a fair trial and a just verdict, the court should be able to grant a new trial without condemning trial counsel as constitutionally ineffective.

In conclusion, an enlightened system of criminal justice must recognize that, despite all the protections afforded a criminal defendant before and during trial, on rare occasions a person will be wrongfully convicted. (See *People* v. *Williams, supra,* 57 Cal.2d 263, 273; *People* v. *Fong Shee Shung* (1941) 42 Cal.App.2d 721, 724 [109 P.2d 974].) Procedural rules designed to encourage the parties to discover and produce their evidence at the trial should not blind the system to the occasional miscarriage of justice. Fundamental principles of due process require a remedy by which a defendant can bring newly discovered evidence before a court to urge correction of an erroneous judgment. The motion for a new trial serves that purpose in California; it provides speedy review of his claims and, because it is a direct attack on the judgment, avoids the limitations of the writs of habeas corpus and *coram nobis.* A strict enforcement of the diligence requirement, however, would frustrate that remedy and, joined with the various limitations imposed on the reach of collateral writs, would risk that an innocent defendant would not fall within the scope of any remedy.

We cannot countenance such a risk; as we said in *Williams,* " '[f]or a guilty man to escape punishment is a miscarriage of justice, but for an innocent man to be convicted is unthinkable.' " (*People* v. *Williams, supra,* 57 Cal.2d 263, 275, quoting *People* v. *Reed* (1938) 27 Cal.App.2d 484, 493 [81 P.2d 162].)

The defense in the case before us presented newly discovered evidence—the testimony of Fred Torrez—which in our opinion would probably lead to a different result at retrial. Reliance upon counsel's lack of diligence to bar defendant from presenting that evidence to a trier of fact would work a manifest miscarriage of justice. (See *People* v. *Williams, supra,* 57 Cal.2d

263, 275.) Under these circumstances, we conclude that the trial court abused its discretion in denying the motion for a new trial.

The judgment is reversed.

Bird, C. J., Mosk, J., Reynoso, J., and Peetris, J.,* concurred.

**GRODIN, J.**—I agree with the conclusion that the judgment be reversed. I have reservations, however, regarding the reasoning used to support that judgment.

Penal Code section 1181 provides in pertinent part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, *in the following cases only*: . . . [¶] 8. When new evidence is discovered material to the defendant, *and which he could not, with reasonable diligence, have discovered and produced at the trial. . . .*" (Italics added.)

Notwithstanding this statutory limitation, the majority hold that "[o]nce a trial court determines that a 'defendant did not have a "fair trial on the merits, and that by reason of the newly discovered evidence the result could reasonably and probably be different on a retrial,"' [citation], it should not seek to sustain an erroneous judgment imposing criminal penalties on the defendant as a way of punishing defense counsel's lack of diligence." (Majority opn., *ante,* at p. 825.)

Unless I am missing something, this is tantamount to a holding that the statutory "reasonable diligence" requirement is unconstitutional to the extent that it would bar a retrial under the circumstances which the majority describes. As the majority acknowledges (see discussion, *ante,* at p. 821), well-established principles already require, as a condition of entitlement to a new trial, that the newly discovered evidence "'be such as to render a different result probable on a retrial of the cause.'" (*People* v. *Sutton* (1887) 73 Cal. 243, 247-248 [15 P. 86].) Therefore, unless the requirement for a determination that a defendant did not have a "fair trial on the merits" is intended to impose an additional limitation, the circumstances described in the majority holding effectively eliminate the "reasonable diligence" requirement except where the lack of diligence is attributable to the defendant himself, rather than to his counsel. (Cf., *ante,* p. 825, fn. 8.)

In reaching this conclusion, the majority avoid reliance upon the defendant's constitutional right to competent counsel, and instead speak generally

---

*Assigned by the Chairperson of the Judicial Council.

of "[f]undamental principles of due process." (*Ante,* p. 826.) I fully understand, and am in sympathy with, the reluctance to force evaluation of a new trial motion into the established mode of testing incompetence of counsel. While relief against incompetence can be obtained on appeal, or through writ of habeas corpus, requiring trial counsel to confess his own incompetence as a price of obtaining a new trial for his client may effectively deter consideration of injustice at the point when it can most effectively and promptly be rectified. Nevertheless, incompetence of counsel proceedings contain safeguards which, in my judgment, ought not be ignored.

Trial counsel, though aware of the existence of a potential witness, may for legitimate tactical reasons decide not to seek that person's testimony. Obviously, in such a situation, no constitutional principle would entitle a convicted defendant to a new trial simply in order to have a second bite at the apple. It is well settled that a claim of ineffective assistance must be rejected if "the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) I see no reason why the same limitation should not be applicable to a motion for a new trial.

The majority opinion is compatible with that limitation, if the requisite determination that "a defendant did not have a fair trial on the merits" is deemed to incorporate it. Thus, the procedure as I envisage it would require defense counsel who makes a motion for new trial based on newly discovered evidence to submit a declaration stating with particularity the circumstances which resulted in the evidence not being brought to the court's attention at an earlier time. The district attorney should be permitted to respond with evidence and argument that the failure to discover or present the evidence stemmed from a competent tactical decision. If the trial court determines that the evidence is material (i.e., that the result would probably have been different if the evidence had been introduced) then the motion for new trial should be granted if it also determines either that (1) it was not and could not reasonably have been discovered sooner, or (2) if it was reasonably discoverable, the failure to discover or present it was true oversight, and not the result of a reasonable and informed tactical choice. That, at least, is how I hope today's decision will be interpreted.

In this case, I agree that those conditions have been met. After an attempt to interview Torrez, counsel might have concluded that Torrez' fears for his employment would make him a hostile and unattractive witness, or that Torrez would refuse, even under oath, to give favorable evidence. Or Torrez might simply have refused, despite counsel's diligence, to reveal what he knew. But counsel, by his own admission, never conducted an investi-

gation sufficient to establish any of these possibilities. (See *People* v. *Frierson* (1979) 25 Cal.3d 142, 163-164 [158 Cal.Rptr. 281, 599 P.2d 587].) I can conceive of no other tactical reason to avoid evaluating Torrez' usefulness as a witness. Since it clearly appears that counsel's failure to produce Torrez stemmed from a true oversight, I join the majority's judgment of reversal.

Kaus, J., concurred.