[No. D001750. Fourth Dist., Div. One. Sept. 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND HAYES, Defendant and Appellant.

518

**COUNSEL**

E. Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WIENER, J.**—Raymond Hayes appeals after a jury convicted him of premeditated first degree murder (Pen. Code, §§ 187, 189) with a firearm use enhancement (§ 12022.5) and the trial court denied his motion for a new trial. Because we conclude the new trial motion should have been granted, we reverse.

### Factual and Procedural Background

On July 24, 1983, a black Ford Thunderbird registered to Hayes stopped near the corner of Oceanview and Milbrae Streets in San Diego. Hayes, who was a passenger in the car, called out to several people standing nearby and requested a PCP cigarette which he referred to as a "life" or a "sherm stick." Several people approached the car including the eventual victim, sixteen-year-old Terry Clemons. Clemons showed Hayes two "sherm sticks." Hayes took one and gave Clemons a rolled up piece of paper. When Clemons discovered that the piece of paper was not a $10 bill, he returned to the car window and demanded his money. Hayes then pulled a gun and shot him. Clemons later died of a gunshot wound to the head.

At trial, four eyewitnesses testified in varying detail as to the events surrounding the shooting. In addition, the People elicited testimony indicating that approximately a week and one-half before Terry Clemons was shot, Hayes had obtained a "sherm stick" from another PCP dealer near the corner of Oceanview and Milbrae, and had attempted to drive away without paying for it. In response, the dealer ran after Hayes and stabbed him in the neck with a knife. The People theorized that on the night in question, Hayes had returned to the same area with the idea of ripping off another PCP dealer and shooting him if there was any trouble.

Hayes did not testify. The only defense witness was Dr. Mark Kalish, a psychiatrist specializing in drug-related problems. On voir dire prior to his testimony before the jury, Dr. Kalish testified as to his clinical opinion that Hayes was under the influence of PCP at the time of the shooting. This opinion was based on a variety of factors, including: a blood test performed on Hayes approximately 18 hours after the shooting which revealed evidence of PCP, Seconal and a derivative of Valium; Hayes' history of drug abuse for pain killing purposes, related to a firearm accident as a child which left him partially paralyzed; police reports recounting Hayes' statements to officers at the time of his arrest; and Kalish's personal examination and interview of Hayes. Defense counsel proposed to ask Dr. Kalish a hypothetical question that assuming Hayes was under the influence of PCP at the time of the shooting, did the doctor have an opinion as to Hayes'

ability to entertain the requisite mental state for premeditated first degree murder?[1] The prosecutor argued that such opinion testimony was inadmissible because there was no foundational evidence before the jury indicating that Hayes was under the influence of PCP at the time of the shooting: "There has to be evidence in the trial, not in inadmissible material which is not before the jury. The fact is that during this trial there is no evidence upon which to base such a hypothetical."

The trial court eventually agreed with the prosecutor, concluding there was no evidentiary basis for Dr. Kalish's opinion. Defense counsel then asked the court if its ruling would be different "if, in fact, there was some evidence before the court . . . that [Hayes] was under the influence of PCP at the time?" The court replied: "If there was some evidence that he was under the influence at the time of the shooting, then I think the doctor's opinion would be admissible, that would be that at that time—I would assume his testimony is at the time of the shooting he actually was unable to form this malice aforethought because he was under the influence of PCP. If that were to be the opinion and there was some testimony that would support a finding that he, in fact, was, not that sometime in the future somebody found traces of PCP in his blood."

Hayes never presented such foundational testimony and, as a result, the jury never heard Dr. Kalish's opinion testimony. Dr. Kalish was allowed to testify generally as to the effects of PCP, but he was never able to relate this testimony specifically to Hayes.

Relying on Hayes' blood test taken 18 hours after the shooting—which was the only evidence of PCP use before the jury—defense counsel argued inferentially that Hayes was under the influence of PCP at the time of the shooting. Then, relying on Dr. Kalish's general testimony regarding the effects of PCP, counsel suggested to the jury that the People had failed to sustain their burden of proving beyond a reasonable doubt that Hayes entertained the mental states of premeditation and malice aforethought necessary to convict him of first degree murder since it was possible the PCP use affected his ability to form these mental states. The prosecutor responded that the blood test in no way indicated Hayes was under the influence of PCP at the time of the shooting; he could have taken PCP at any time during the 18-hour period. Furthermore, the prosecutor emphasized there was no

---

[1]The trial court interpreted defense counsel's offer of proof regarding Hayes' ability to entertain the requisite mental state as not running afoul of the recent legislative abolition of the "diminished capacity" defense. (See Pen. Code, §§ 22, subd. (a), 25, subd. (a), and 28.) We assume likewise, and therefore do not address Hayes' contention that the failure to admit properly founded expert opinion testimony would violate his due process rights to present all evidence in his defense.

evidence indicating that even if Hayes was under the influence of PCP at the time of the shooting, such influence affected his ability to intend and premeditate the killing. The jury found Hayes guilty of premeditated first degree murder.

Hayes then filed a motion for a new trial, alleging he possessed newly discovered evidence which would provide the foundation for Dr. Kalish's opinion testimony which the court had requested. (See *ante,* p. 521.) The new evidence was in the form of testimony from Kenneth Hayes (a distant relative of defendant) to the effect that he was with defendant on the evening of the shooting and saw him smoking PCP cigarettes. Kenneth Hayes' absence from the first trial was explained by his statements that he was in violation of probation at the time he learned a defense investigator was looking for him, and he avoided any contact with the investigator for fear that he would be caught and his probation would be revoked. This information was corroborated in the declaration of the defense investigator, who recounted his numerous attempts to locate Kenneth Hayes prior to the trial.[2]

The trial judge denied the new trial motion. He determined that ". . . there's just not quite enough that Mr. Kenneth Hayes could offer that would suffice it to allow the doctor to express an opinion as to the mental state of the defendant. Needless to say, the reason I have hesitated so much is because it's not all that clear and what is proffered now as being new evidence and in weighing the admission of the doctor or offer of proof as to the doctor's opinion, I don't think that he has quite enough to—on the basis of what Kenneth Hayes says, in his affidavit, to support that opinion, so the motion will be denied."

## DISCUSSION

■ If an expert is asked to give his opinion based on an assumed set of facts, the assumption on which the hypothetical question is based must be supported by evidence in the record. (See *Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 338-339 [145 Cal.Rptr. 47]; Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1180, pp. 1093-1094.) In the present case, the only evidence before the jury regarding Hayes' PCP use was the blood test taken some 18 hours after the shooting incident. Dr. Kalish himself admitted that there was no way to tell solely from the blood

---

[2]Between the conclusion of the trial and the filing of Hayes' motion for a new trial, Kenneth Hayes was arrested for violating his probation. Probation was reinstated on January 25, 1984. Due to confusion caused by the same last name, Raymond Hayes' attorney received a phone call from the superior court clerk regarding Kenneth Hayes' probation hearing. As a result, the attorney located Kenneth Hayes and obtained his declaration in preparation for the motion for new trial.

test whether Hayes was under the influence of PCP at the time of the shooting. Accordingly, there was no evidence before the jury on which defense counsel could base his assumption that Hayes was under the influence of PCP when he shot Terry Clemons and the trial court properly refused to permit Dr. Kalish's testimony in response to the hypothetical question.[3]

Our conclusion that the hypothetical question posed to Dr. Kalish was not properly founded on evidence in the record necessarily implies that had there been such evidence, the opinion testimony would have been admissible. As noted previously, the trial court articulated a similar rationale at the time it ruled Dr. Kalish's testimony inadmissible: "If there was some evidence that he was under the influence at the time of the shooting, then I think the doctor's opinion would be admissible . . . ."

The People do not seriously contend that Kenneth Hayes' testimony, if given at trial, would not provide sufficient foundation for Dr. Kalish's opinion regarding defendant's mental state.[4] Instead, relying in particular on the Supreme Court's most recent discussion of motions for new trial based on newly discovered evidence (see *People* v. *Martinez* (1984) 36 Cal.3d 816 [205 Cal.Rptr. 852, 685 P.2d 1203]), they argue that Hayes' motion was nonetheless properly denied.

In this regard, the People first suggest that Kenneth Hayes' testimony was not "newly discovered." They contend that both defendant and his counsel knew of the potential significance of Hayes' testimony as was evidenced by their attempts to locate him prior to trial. Were the "newly

---

[3]We are curious as to why defense counsel did not attempt to introduce Dr. Kalish's clinical opinion that Hayes was under the influence of PCP at the time of the shooting. (See *ante*, p. 520.) While such opinion was based on matters outside the record, it falls within the general rule that an expert may base his opinion on information "*whether or not admissible,* that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, . . ." (Evid. Code, § 801, subd. (b) (italics added); *People* v. *Mazoros* (1977) 76 Cal.App.3d 32, 44 [142 Cal.Rptr. 599].) Such testimony would, of course, have provided sufficient foundation for Dr. Kalish's further testimony regarding defendant's mental state at the time of the shooting. In view of our subsequent conclusion that Kenneth Hayes' testimony as described in his declaration in support of defendant's motion for new trial would likewise provide sufficient foundation for Dr. Kalish's opinion testimony, we have no further need to discuss the admissibility of Dr. Kalish's clinical opinion or the tactical reasons underlying defense counsel's decision not to seek its admission.

[4]The Attorney General does rely by analogy on two cases dealing with the consumption of alcohol (see *People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 735 [182 Cal.Rptr. 671]; *People* v. *Cram* (1970) 12 Cal.App.3d 37, 44 [90 Cal.Rptr. 393]) to suggest that Kenneth Hayes' testimony as to the quantity of PCP ingested (sharing three cigarettes) was insufficient to establish that defendant was under the influence. Dr. Kalish, however, testified as to the unpredictable effects of the drug, even in very small doses. We believe Hayes' testimony was sufficient to allow Dr. Kalish to give his opinion as to the effect of PCP on defendant's mental state.

discovered" requirement interpreted literally and restrictively, this set of facts might pose some concern. But we read the Supreme Court's decision in *People* v. *Williams* (1962) 57 Cal.2d 263, 273-274 [18 Cal.Rptr. 729, 368 P.2d 353] to have rejected such a mechanistic interpretation in favor of a more realistic approach which ties the concept of "newly discovered" evidence to the reasonableness of the defense conduct in failing to present the evidence at the first trial. In *Williams,* the court reversed an order denying a new trial even though the defendant knew of the "new" witness and her potential testimony before the first trial. (*Id.,* at p. 272.) This approach was reinforced in *Martinez, supra,* 36 Cal.3d 816, in which the court held that the attorney's lack of diligence in discovering relevant evidence, as distinguished from the defendant's, will generally not support the denial of a motion for new trial. (*Id.,* at p. 825.) In the present case, the People do not contend that the failure to present Kenneth Hayes' testimony at the first trial was the product of defendant's lack of diligence. Accordingly, we conclude that Kenneth Hayes' testimony was "newly discovered" evidence within the meanings of *Williams* and *Martinez.*[5]

■    The People next attempt to argue that Kenneth Hayes' testimony was "somewhat cumulative." While recognizing there was no other evidence at trial which remotely duplicated the material contained in Kenneth Hayes' declaration, the People nonetheless rely on the fact that defendant could have testified to his ingestion of PCP had he so desired. This argument, however, fails to recognize that defendant has a Fifth Amendment privilege not to testify. To deny his motion for new trial based on the fact that he could have presented the same evidence by waiving his Fifth Amendment rights would impermissibly penalize his exercise of those rights. (Cf. *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].)

■    Finally, the People contend it is not reasonably probable that the testimony of Kenneth Hayes and in turn Dr. Kalish, "had it been presented to the jury, would have affected the outcome of the trial." (*People* v. *Martinez, supra,* 36 Cal.3d at p. 822.) The consideration of this factor on a motion for new trial in essence asks both the trial and appellate courts to determine whether the inability of the defendant to present the evidence in question prejudiced the outcome of the trial. In viewing such an issue, we justifiably accord considerable deference to the trial judge "because of 'his

---

[5]Inexplicably, the People also argue that Kenneth Hayes' declaration in support of the motion for new trial was not the "best evidence" of the facts it contained because "[a]lthough Hayes was apparently brought to court, he never testified." The deputy district attorney arguing in opposition to the motion for new trial explicitly conceded that "proof by affidavit is the appropriate method of going forward with the motion for new trial in newly discovered evidence. . . . So where I state that this is not the best evidence in my original points and authorities, that should be stricken. That is an error."

observation of the witnesses, [and] his superior opportunity to get "the feel of the case." ' [Citation.]" (*Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1024 [213 Cal.Rptr. 712].) In the present case, however, the trial court did not rely on the lack of prejudice in denying Hayes' new trial motion. In fact, when initially considering the admissibility of Dr. Kalish's opinion testimony at trial, the judge commented, "[T]he problem is that if it is ultimately deemed inadmissible, it wouldn't be too much help to the prosecution in allowing it, but if I exclude it and ultimately it's going to be error, *it would be reversible error.*" (Italics added.)

We concur with the trial court's view of the prejudice to Hayes in not having Dr. Kalish's opinion presented to the jury. Hayes did not contest that he shot Terry Clemons. His sole defense, by way of mitigation, was that he did not entertain the mental state necessary for premeditated first degree murder. The Supreme Court has recently discussed in a variety of contexts the importance of a defendant's mental state in determining criminal culpability. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 551-552 [205 Cal.Rptr. 265, 684 P.2d 826]; *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318]; *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 148-152 [197 Cal.Rptr. 79, 672 P.2d 862]; *People* v. *Burroughs* (1984) 35 Cal.3d 824, 850 [201 Cal.Rptr. 319, 678 P.2d 894] (conc. opn. of Bird, C. J.).) The importance of mental state in assessing a defendant's criminal liability necessarily presumes that the jury has before it all evidence relevant to the defendant's mental state. Here, the trial court ruled that Hayes was unable to present his best evidence on *the* critical issue in the case. While that ruling was correct when defendant failed to provide a proper foundation for the evidence (see *ante,* at p. 522), Kenneth Hayes' testimony provided the necessary link. Dr. Kalish's testimony would likely have affected the verdict on the issue of premeditation if not on the question of malice.[6] By reason of such evidence, "the result could reasonably and probably be different on retrial." (*People* v. *Shepherd* (1936) 14 Cal.App.2d 513, 519 [58 P.2d 970]; quoted in *People* v. *Williams, supra,* 57 Cal.2d at p. 275.) Hayes should have the opportunity to present and argue that evidence to the jury.

---

[6]Consistent with the Supreme Court's analysis in *People* v. *Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal.Rptr. 550, 447 P.2d 942], we think the jury would likely have viewed Dr. Kalish's testimony as significant on the issue of premeditation. Other than the presence of the gun in the car, which is at best equivocal, there was no evidence of any prior planning activity by Hayes. Evidence of "prior relationship and/or conduct with the victim" was limited to the circumstances of the "sherm stick" transaction; there was no evidence of any prior relationship between Hayes and Clemons which might give rise to a motive for the killing. The prosecution's best argument was that the "manner of killing" was consistent with a premeditated intent to kill.

██ ██ ██ Accordingly, we conclude the trial court erred in denying Hayes a motion for a new trial.[7]

## DISPOSITION

Judgment reversed.

Butler, J., concurred.

**STANIFORTH, Acting P. J.**—I respectfully dissent.

The evidence against Raymond Hayes demonstrates he shot and killed 16-year-old Terrence Clemons in a scene laid in the mad upside-down world of drug buying, selling and use. A week earlier Hayes had obtained a "sherm stick" (PCP-soaked marijuana or tobacco cigarette) from another dealer on the corner of Ocean View and Milbrae. He had attempted to drive away without paying for it. The dealer ran after Hayes and stabbed him in the neck. Hayes and his companion returned to the same corner a week later; this time Hayes was a passenger in his black Thunderbird. Hayes said he wanted a sherm stick. Clemons showed Hayes two sherm sticks. Hayes took one look at them and gave Clemons a little piece of paper. When Clemons realized the paper was not a $10 bill, he stuck his head into the passenger window and asked for his money. Hayes promptly shot him in the eye and the car sped away. The police arrived shortly thereafter (9 p.m.). They found a PCP cigarette beneath Clemons' body. Clemons died from the gunshot wound to the head. The bullet entered through the left eye.

## DISCUSSION

### I

Penal Code section 22, subdivision (b), indicates *evidence of voluntary intoxication is admissible to show a defendant did not actually form a requisite intent.* However, there is a problem applying that doctrine to this

---

[7]For the purposes of retrial, we also note the court instructed the jury pursuant to CALJIC No. 4.20 that " 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.' [¶] In the offense charged in count one, the fact that the defendant was voluntarily intoxicated is not a defense and does not relieve him of responsibility for the crime." It is well-established that it is error to give such an instruction in a trial such as the present one which involves a crime requiring a specific mental state. (*People* v. *Spencer* (1963) 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134]; *People* v. *Ford* (1964) 60 Cal.2d 772, 796 [36 Cal.Rptr. 620, 388 P.2d 892], overruled on other grounds in *People* v. *Satchell* (1971) 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].) The instruction should not be given on retrial.

case. There is simply no evidence whatsoever of drug intoxication. On this state of the evidence—an evidentiary vacuum—the trial court properly excluded the expert testimony as to the impact of PCP intoxication on Hayes' intent. Apparently, Hayes had told Dr. Kalish he was intoxicated due to PCP at the time of the crime. The defense, for reasons unknown, did not offer Hayes' statements to the doctor (and to the police) regarding his state of intoxication. However, if we assume the doctor's testimony were to be based upon Hayes' statements, the opinion was still inadmissible. The reasons?

First, Hayes' statements could not be admitted "for the truth asserted" because they were not offered against him as an admission as self-serving hearsay. The reliability base justifying admissibility is totally lacking. *An admission is a statement by a party which is offered against the party making the statement.* (Evid. Code, § 1220; *People* v. *Williamson* (1977) 71 Cal.App.3d 206, 214 [139 Cal.Rptr. 222].) Hayes' statements would not be declarations against penal interest. The statements are self-serving, patently designed to assist him in his defense. Here, the expert could testify as to the matter told him by Hayes and base his opinion as to Hayes' mental state upon these hearsay statements. The law does not authorize the hearsay statements to be admitted for the truth of the matter asserted, i.e., to establish the fact that Hayes was in fact intoxicated. To do so would totally negate the hearsay rule.

Where the basis of the expert's opinion is *unreliable* hearsay, the courts will reject it. (See *Ribble* v. *Cook* (1952) 111 Cal.App.2d 903, 906 [245 P.2d 593] [traffic officer's opinion as to point of impact of collision, based on what witnesses told him]; *Behr* v. *Santa Cruz* (1959) 172 Cal.App.2d 697, 705 [342 P.2d 987] [fire ranger's official report on cause of fire which he had not witnessed, based on statements of others]; *Mason* v. *Mason* (1960) 186 Cal.App.2d 209, 215 [8 Cal.Rptr. 784] [court-appointed auditors; report based on out-of-court statements of escrow and loan officers]; *Hodges* v. *Severns* (1962) 201 Cal.App.2d 99, 108 [20 Cal.Rptr. 129]; *People* ex rel. *Dept. of Public Works* v. *Alexander* (1963) 212 Cal.App.2d 84, 95 [27 Cal.Rptr. 720]; *Kitchel* v. *Acree* (1963) 216 Cal.App.2d 119, 125 [30 Cal.Rptr. 714]; Witkin, Cal. Evidence, p. 369.)

An expert may base his opinion on matters made known to him at or before the hearing whether or not admissible if they are of the species or type that may reasonably be relied upon by an expert in forming an opinion upon the subject to which his testimony relates. Furthermore, it is sound law an expert may base his opinion upon information that is itself not in evidence such as a written inadmissible extrajudicial admission. (*People* v. *Mazoros* (1977) 76 Cal.App.3d 32, 44-45 [142 Cal.Rptr. 599].)

In a strikingly parallel case, the Supreme Court said: "Since *plaintiff's expert testimony as to the reasonableness of the charges was based on hearsay evidence inadmissible to prove* that the repairs had been made, defendant's objections to it should have been sustained. '[A]n *expert must base his opinion either on facts personally observed or on hypothesis that find support in the evidence.'*" (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc.* (1968) 69 Cal.2d 33, 43-44 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], italics added.) (See also *People* v. *Sundlee* (1977) 70 Cal.App.3d 477, 484 [138 Cal.Rptr. 834].)

Hayes' reliance upon *In re Spencer* (1965) 63 Cal.2d 400, 412 [46 Cal.Rptr. 753, 406 P.2d 33],[1] in support of his position is factually inapposite. Incriminating statements made to a psychiatrist are not admissible to prove the truth of the matter asserted; they are not independent evidence in the record allowing the expert's opinion. (*People* v. *Cantrell* (1973) 8 Cal.3d 672, 683 [105 Cal.Rptr. 792, 504 P.2d 1256], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324, fn. 5 [149 Cal.Rptr. 265, 583 P.2d 1308]; *People* v. *Froom* (1980) 108 Cal.App.3d 820, 829 [166 Cal.Rptr. 786].)

If Hayes wished to place his mental state in issue—and thereby rely upon the defense of lack of intent due to drug intoxication—he had the burden of producing some competent evidence, not "unreliable hearsay" on that issue. (*People* v. *Froom, supra,* 108 Cal.App.3d 820; *People* v. *Cruz* (1978) 83 Cal.App.3d 308, 331 [147 Cal.Rptr. 740].) A statement admitted only as a basis for the psychiatrist's expert opinion would not constitute such hard evidence of lack of intent.

## II

I have no quarrel with the majority opinion's conclusion the hypothetical question posed to Dr. Kalish was not properly founded on evidence in the record. The question here is whether, upon the motion for new trial, this deficiency would be corrected by the proffered evidence of relative Kenneth Hayes. I am in total disagreement with the majority opinion as to the legal impact of Kenneth Hayes' declaration.

## III

Penal Code section 1181, subdivision 8, authorizes the grant of a new trial "[w]hen new evidence is discovered material to the defendant, and

---

[1]Hayes' counsel does not honor us with the entire quote, nor does he cite the footnote at page 412: "If defendant does not offer evidence of the mental condition at the penalty trial, the court-appointed psychiatrist may not of course testify at that trial." (*In re Spencer, supra,* 63 Cal.2d 400, 412, fn. 10.)

which he could not, with reasonable diligence, have discovered and produced at the trial." The granting or denying of a motion for new trial on grounds of newly discovered evidence is a matter wholly within the sound discretion of the trial court. Its ruling will not be disturbed except for an abuse of discretion. (*People* v. *Martinez* (1984) 36 Cal.3d 816, 821 [205 Cal.Rptr. 852, 685 P.2d 1203].) In *Martinez,* the Supreme Court stated: " 'To entitle a party to new trial on the ground of newly discovered evidence, it must appear,—"1. That the evidence, and not merely its materiality, be newly discovered; . . . 3. That it be such as to render a different result probable on a retrial of the cause; . . ." ' " (*Ibid.*) Thus the statute ensures a defendant may not be wrongfully convicted because of his inability to locate potentially exculpating evidence. It may be agreed in order to achieve the overall purpose of the policy underlying the statute and standard of review, the individual requirements set forth in Martinez "may be relaxed when the newly discovered evidence would probably lead to a different result on retrial." (*Id.,* at p. 825, fn. omitted.)

It is argued the testimony of Kenneth Hayes is such as to make a different result probable on retrial. This is not true. Let us examine Kenneth Hayes' precise statement.

"2. . . . Raymond Hayes came by the house with his friend, Mike, at about 5:30 p.m. and stayed about an hour and a half and then left because they were going to look for some Sherm. They left in a black T-Bird but I do not know where they went.

"3. While Raymond and Mike were at the house I saw them smoke 3 Sherm Sticks between the two of them. They offered me some but I said I did not want any."

This evidence is insufficient as a matter of law to warrant the granting of a new trial. This is not evidence Hayes was drug intoxicated at the time of the shooting, unable to form the specific intent required for first degree murder. "The fact that a defendant has been drinking, without evidence that he became intoxicated thereby, provides no basis for an instruction on intoxication." (*People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 735 [182 Cal.Rptr. 671].) If evidence of drinking alone is legally insufficient to require a *sua sponte* instruction, it certainly is not evidence that would warrant the granting of a new trial. (See *People* v. *Spencer, supra,* 60 Cal.2d 64, 87; *People* v. *Cram* (1970) 12 Cal.App.3d 37, 44 [90 Cal.Rptr. 393].)

In *People* v. *Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337], the Supreme Court said: "Here the evidence of diminished capacity was minimal. Miss B's preliminary hearing testimony was incon-

sistent with her testimony at trial and was thus equivocal. No other evidence of Booker's intoxication was presented. *Furthermore, there was no evidence that he was so intoxicated that he could not form an intent to commit rape. Under the circumstances the court did not err in refusing to give the instructions.*" (Italics added.)

In *People v. Barrick* (1982) 33 Cal.3d 115, 132 [187 Cal.Rptr. 716, 654 P.2d 1243], there was an ingestion of marijuana and beer mixed with PCP. Barrick suggested he voluntarily consumed beer and marijuana, but he unknowingly consumed PCP that had been mixed with the marijuana, causing him to become unconscious at the time and place of the commission of the alleged offense. The Supreme Court held: "The court must give a requested instruction only if defendant proffers evidence *sufficient to 'deserve consideration by the jury,* i.e., "evidence from which a jury composed of reasonable men could have concluded"'* that the particular facts underlying the instruction did exist. (*People v. Flannel* (1979) 25 Cal.3d 668, 684 . . . , quoting from *People v. Carr* (1972) 8 Cal.3d 287, 294 . . . .) *There was no direct evidence indicating unconsciousness of the defendant at the time and place of the charged offense. Moreover, there was no evidence from which the jury could reasonably infer that defendant was unconscious at the time of the charged crime. Thus, we conclude there was no error in failing to instruct according to CALJIC No. 4.30.*" (*Ibid.,* italics added.)

The court said in *People v. Carr* (1972) 8 Cal.3d 287, 294-295 [104 Cal.Rptr. 705, 502 P.2d 513]: "It has been held that merely showing that the defendant consumed some alcohol prior to commission of the crime *without showing the effect of the alcohol on him is not sufficient to warrant an instruction on diminished capacity.* [Citations.] Similar rules should apply to the consumption of marijuana.

"In the instant case, there is no evidence as to the amount of marijuana smoked. The only evidence as to the effect on defendant of the marijuana is that it gave him courage to carry out his criminal design. Such evidence in no way negates his intent to commit his acts or his awareness of their wrongful nature. [Citation.] Although evidence that marijuana gives a defendant courage to carry out his criminal design relates to his ability to premeditate and deliberate, we are satisfied that, *in the absence of evidence indicating the quantity of marijuana consumed or additional evidence reflecting the state of defendant's mind, a jury could not reasonably have concluded, in the light of the evidence in this case, that defendant by reason of intoxication did not premeditate or adequately deliberate. Accordingly, the refusal of the offered instruction was not error.*"

*People v. Caldwell* (1984) 36 Cal.3d 210, 225 [203 Cal.Rptr. 433, 681 P.2d 274], says it briefly and best: "Washington contends that there is no

substantial evidence that he possessed the requisite specific intent for robbery, characterizing defense evidence of diminished capacity (a sheriff's sergeant's testimony that, three hours after he was captured, defendant appeared lethargic and appeared to be drifting off to sleep, leading him to suspect him of being under the influence of a drug, perhaps PCP) as 'uncontradicted.' *Mere consumption of drugs is insufficient to establish diminished capacity, however; the evidence must demonstrate the effect of such consumption on the defendant.* [Citations.]'' (Italics added.)

Finally, from one of the seminal cases, *People* v. *Gonzales* (1970) 4 Cal.App.3d 593, 608 [84 Cal.Rptr. 863]: "For this court, on the basis of the cold record of Trevino's having consumed an indeterminate amount of beer, to now second-guess all the attorneys and the trial court, and rule that the evidence of Trevino's intoxication was such as to require a diminished capacity instruction, *sua sponte,* will open the floodgates to such demands in all other cases where there is testimony that the defendant had the proverbial 'couple of beers.' This we decline to do.''

Taking Kenneth Hayes' proffered testimony at face value, together with all reasonable inferences that can be drawn therefrom, Kenneth Hayes' evidence would still not reach a level where even a *sua sponte* instruction would be warranted without it being conjoined with the requirement as set forth in *Caldwell, Carr* and *Gonzales.* The evidence *must demonstrate the effect of such consumption on the defendant.* The proffered evidence here is meaningless since it fails to indicate the effect of consumption on Hayes.[2] It is difficult to find abuse of discretion in a factual situation such as this.

I would affirm the conviction.

Respondent's petition for review by the Supreme Court was denied November 26, 1985. Mosk, J., was of the opinion that the petition should be granted.

---

[2]These foregoing conclusions are buttressed in learned detail in 2 Wigmore on Evidence (Chadbourn rev. ed. 1979) section 672, pages 934-936.