Filed 9/24/13  P. v. Mendoza CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL MENDOZA,<br><br>Defendant and Appellant. | A136696<br><br>(Contra Costa County<br>Super. Ct. No. 51205673) |

This is an appeal from judgment after defendant Samuel Mendoza was convicted by a jury of three felony offenses — to wit, mayhem (count one), assault with a deadly weapon (count two) and assault with force likely to produce great bodily injury (count three), with enhancements for personal use of a deadly weapon (all counts) and infliction of great bodily injury (counts two and three).  The trial court thereafter denied defendant's motion for new trial, suspended imposition of sentence, and placed him on formal probation for three years with one year to be spent in county jail.  Defendant challenges the judgment on the ground that the trial court erred by denying his motion for new trial brought under Penal Code section 1181 upon his discovery of new evidence.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2012, an amended criminal information was filed charging defendant with:  (1) mayhem (count one) (§ 203), (2) assault with a deadly weapon (count two)

---

[1]     Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

(§ 245, subd. (a)(1)), and (3) assault with force likely to produce great bodily injury (count three) (§ 245, subd. (a)(4)). This information further alleged defendant personally used a deadly weapon with respect to all counts, and inflicted great bodily injury with respect to counts two and three. (§ 12022.7, subd. (a); § 12022, subd. (b)(1).)

The charges and allegations set forth above stem from events occurring on February 22, 2012, at a smog check station in Richmond owned and operated by the victim, Cem Domac. Domac generally charged a customer $99.95 for a smog test, which amount was payable after the test whether the customer's vehicle passed or failed. If the customer refused to pay for the test, Domac was authorized by law to issue a mechanic's lien and hold his or her vehicle until payment was made. For each customer, Domac prepared a work order, signed by the customer prior to the smog test, setting forth this information. Consistent with the work order, Domac generally did not provide the customer a free retest if his or her vehicle failed. Occasionally, however, Domac would make an exception to this rule for a repeat customer.

## I.  The Prosecution's Case.

Relevant to this particular case, Domac testified that defendant signed a work order for a smog test on February 22, 2012, at about 4:00 p.m. In doing so, defendant was advised of his obligation to pay for the test, whether or not his vehicle passed, and Domac's right to issue a mechanic's lien and hold his vehicle in the event he failed to pay. Because defendant was a repeat customer, however, Domac agreed, and the work order stated, that the price for the smog test would be just $80. Defendant's vehicle failed the test.

Following the failed test, Domac offered defendant a free retest, but advised him he still needed to pay for the first test. Defendant, however, did not want to pay for the first test at that time, and requested to pay when he returned for the retest. Domac declined defendant's request and insisted he pay immediately. Defendant became angry, refused to pay, and walked towards his vehicle with his keys in hand. In doing so, defendant walked past Ruth Castro, also a repeat customer, who described defendant as so angry his face was red. Defendant told her: "[Domac's] charging me for the smog and

2

it didn't pass." Castro, who was with her daughter, became scared and locked her car doors.

Domac, concerned defendant would leave without paying and annoyed by his refusal to abide by the terms of the work order, got in his own vehicle and moved it to where it was blocking defendant's vehicle. Domac then exited his vehicle, walked to defendant's vehicle, and reached inside through the open driver-side window to take the keys from the ignition. Although annoyed, Domac's only intention was to take defendant's keys to prevent him from leaving. While he may have touched defendant when reaching for the keys, Domac did not punch, grab or push defendant. In fact, Domac acted so quickly to take the keys that defendant had no immediate reaction. However, after Domac had walked back to his own vehicle and was opening the door to sit inside, defendant approached him from behind. According to Castro, the men began hitting each other, with defendant acting as "aggressor" and Domac defending himself. Defendant then reached into his back pocket and retrieved something, later identified as a box cutter, which he swung at Domac's forehead, cutting him "terribly."

Domac, bleeding profusely from the wound, used his shirt to stop the blood and ran to the bathroom as defendant fled toward the street. Once in the bathroom, Domac could see the skin on his face was cut "open" in an area ten inches long by half an inch wide. Domac called 911. He was then taken to the hospital, where his wound required ten stitches and 15 staples. He now has permanent scarring and suffers ongoing pain and discomfort.

## II.    The Defense Case.

Defendant testified in his own defense, disputing several aspects of Domac's version of events. Defendant explained that Domac first told him his vehicle passed the test, before then telling him the vehicle failed and that he nonetheless had to pay $80. The men had an argument and Domac, after refusing defendant's request for a free smog retest or, alternatively, to pay half the $80 price immediately and half at the time of the retest, said a bad word in English and walked out of his office. Defendant, believing Domac did not want to reach an agreement on payment, returned to his own vehicle,

3

passing Castro on the way. Once in his vehicle, defendant looked back while starting to reverse, at which time he heard a honk and saw that Domac had moved very quickly to block him with his own vehicle. Domac then left his vehicle and approached defendant's vehicle, opening the door and grabbing defendant while snatching his keys from the ignition. Defendant begged Domac to release him, but Domac refused and dragged him from the vehicle by his shirt. At this point, defendant testified that he cut Domac once with a box cutter that he carried in his vehicle for his construction job, solely in order to free himself.[2]

Defendant disputed Domac's and Castro's testimony that he pulled the box cutter from his back pocket and stabbed Domac by Domac's vehicle door after following Domac back to his vehicle. Defendant insisted, rather, that the men remained at defendant's vehicle and that he took the cutter from inside his car. Defendant acknowledged running away as Domac ran inside bleeding, explaining he was scared Domac would return with a stick. Eventually, defendant, who was still scared, called 911.

### III.    Rebuttal Testimony.

Officer Giulia Colbacchini questioned both men after the incident. Defendant acknowledged refusing to pay for the failed test, and grabbing his keys to return to his vehicle. Domac used his own vehicle to block defendant from leaving, then walked to defendant's window, grabbed him by the shirt and took his keys before walking away. At this point, defendant told Officer Colbacchini that he grabbed the box cutter, left his vehicle, walked up to Domac and cut him. Defendant then took off after seeing Domac bleeding profusely. Defendant explained that he was intimidated by Domac, who was significantly taller (six-foot-five compared to five-foot-two), and had acted in self defense.

---

[2]    Defendant said he was aiming for Domac's hand when he instead cut Domac's face.

4

Domac, in turn, admitted to Officer Colbacchini that he shoved defendant to move him aside in order to take his keys from the ignition. Domac did not tell the officer that a struggle occurred by his own vehicle before defendant cut him. Nor did Domac tell the officer that he had offered defendant a special price and a free retest. However, like defendant, Domac told the officer that defendant left his own vehicle after Domac took his keys, walked up to Domac and cut him. In fact, Officer Colbacchini acknowledged both Domac's version and defendant's version of the incident were generally consistent, including the fact that "defendant walk[ed] up to Mr. Domac and then cut[] him on the face" before "fleeing the scene."

## IV.     The Verdict and Sentencing.

On June 7, 2012, a jury found defendant guilty of all counts and enhancements. Defendant subsequently moved for a new trial based on newly discovered evidence. Specifically, this evidence, revealed by Domac to the prosecutor after being advised of the verdict, was that Domac gave Castro a free smog test the day after defendant cut him. As discussed in more detail below, the trial court denied his motion after a full hearing. The trial court then suspended imposition of sentence based upon a finding of the unusual circumstance of defendant's lack of criminal history. (Cal. Rules of Court, rule 4.413.) The trial court placed defendant on formal probation for three years with one year to be spent in county jail. In addition, the trial court awarded defendant 192 days of custody credit and 192 days of conduct credit, ordered him to pay $6,512 as direct victim restitution, and imposed various other fees and assessments. This timely appeal followed.

### DISCUSSION

Defendant challenges on appeal the trial court's denial of his motion for new trial based on newly discovered evidence. (§ 1181, subd. (8).)[3] Defendant contends the trial

---

[3]     "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶] . . . [¶] (8) When new evidence is discovered material to the defendant, and which he could

5

court's ruling violated his constitutional due process right to a fundamentally fair trial under the Fifth and Fourteenth Amendments of the United States Constitution and Article I of the California Constitution.

The following well-established legal principles guide our review. "In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: ' "1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' [Citations.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328; see also *People v. Soojian* (2010) 190 Cal.App.4th 491, 512.) " ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citations.] ' "[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background.' " [Citation]." (*People v. Delgado, supra,* 5 Cal.4th at p. 328.)

Here, defendant's motion for new trial was based on evidence, revealed by Domac to the prosecutor after trial, that, the day after the incident, Castro returned to the store for a smog check and to see how Domac was doing. Domac acknowledged giving Castro a free smog test, charging her for only the DMV and smog certificate fees. Domac denied, however, that the free smog test was in exchange for Castro's agreement to testify in his favor at trial. The prosecutor immediately notified defense counsel regarding the details of this conversation.

In denying defendant's new trial motion, the trial court found that the newly-offered evidence failed to raise a significant doubt as to Castro's credibility because her trial testimony, given after she received the free test, was "substantially similar" to her

not, with reasonable diligence, have discovered and produced at the trial. . . ." (§ 1181, subd. (8).)

6

statement to police on the day of the incident *before* she received the free test. As such, the trial court found, there was no reasonable probability the new evidence would lead to a new outcome on retrial. For reasons to follow, we agree with the trial court's ruling.

As an initial matter, we are doubtful the fact of Castro's free smog test the day after the incident actually constitutes "newly discovered evidence" within the meaning of section 1181. The defense team, which conducted its own pretrial investigation shortly after the incident, was aware during trial that Castro was one of Domac's repeat customers, and that Castro returned to Domac's smog station the day after the incident. Specifically, Castro acknowledged to the defense that she had been to the smog station "on multiple occasions," that she remained with Domac after he was stabbed to make sure he was okay and to "see if there was anything I could do to testify or anything, because I couldn't just leave him there alone," and that she then returned the next day to complete the smog test that she had been waiting for at the time of the incident and to check on him.[4] Given these known facts, the defense team clearly was alerted to the possibility of bias between Castro and Domac, and had an opportunity at trial to investigate the extent of it before the jury.[5] (*People v. Hall* (2010) 187 Cal.App.4th 282, 299 [no error to deny motion for new trial where the "new evidence" was "available . . . at the time of trial and [defendant] could have discovered and produced the evidence if he had exercised reasonable diligence"].)

Denying the discoverability of the evidence of the free test, defendant correctly notes that the trial court sustained on relevance grounds the prosecutor's objection to defense questioning regarding how many times after the incident Castro talked to Domac

---

[4]     The record suggests that, when the stabbing occurred, Castro had been waiting to have her former boyfriend's truck tested, but that, due to the stabbing, the truck was not tested. As such, she returned the next day to ask Domac "how he was feeling and when was he going to do the job on my truck."

[5]     Indeed, counsel was aware Domac had given defendant a special price of $80 for the smog test because he was a repeat customer, and that he sometimes gave repeat customers free retests if their vehicle failed. As such, defense counsel should have been aware of the possibility that Domac would make special price concessions for Castro.

after Castro had already testified that she visited him the day after the incident to see how he was doing. However, defendant ignores that the trial court in no way interfered with his counsel's continued questioning of Castro about her interactions with Domac the day after the incident, with counsel first asking her, "When you saw [Domac], you just asked him how he was doing," and then asking, "So when you saw him again, did you and he talk about this incident . . . ?" At this point, defense counsel indicated she had no further questions, without raising a single question about the terms of the smog test that Castro had already acknowledged receiving that day.[6] On this record, we cannot agree with defendant the trial court prevented him from discovering the fact of Castro's free smog test.

In any event, having considered the record in this case as a whole, we agree with the trial court that admission of evidence of the free smog test would not render a different result reasonably probable for defendant. Even accepting the fact that Castro's receipt of a free test from Domac following the incident is suggestive of bias, as the trial court pointed out, it nonetheless remains true that Castro told police before the free test substantially the same version of events that she told on the witness stand after the free test. As such, the trial court could have reasonably concluded that evidence of the free test did not significantly contradict or diminish the probative value of Castro's testimony regarding defendant's guilt, and did not significantly improve the probative value of defendant's uncorroborated testimony that he stabbed Domac in order to escape as Domac was holding him down at his own vehicle. (*People v. Delgado, supra*, 5 Cal.4th at p. 329 ["the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable"]; *People v. Beyea* (1974) 38 Cal.App.3d 176, 202.) Further bolstering our conclusion in this regard is the fact that defendant told Officer Colbacchini just after the incident substantially the same thing that Castro and Domac told the officer just after the incident – to wit, that he followed Domac

---

[6] To the first question Castro responded "Yes," and to the second question she responded "No."

8

back to his vehicle, where he then stabbed Domac before fleeing.  As such, contrary to the cases relied upon by defendant where the appellate court reversed a trial court's denial of a new trial based upon newly discovered evidence, the new evidence before us neither proves defendant's innocence nor "destroys the credibility" of the sole percipient witness.  (Cf. *People v. Randle* (1982) 130 Cal.App.3d 286, 293 [prejudicial error to deny motion for new trial where the newly proffered evidence "does more than merely impeach [the only percipient witness other than the defendant] — it tends to destroy her testimony by raising grave doubts about her veracity and credibility"]; *People v. Huskins* (1966) 245 Cal.App.2d 859, 862-863 [while "[o]rdinarily, evidence which merely impeaches a witness is not significant enough to make a different result probable," it was error to deny a motion for new trial in a child sexual abuse case where the new evidence eviscerated the credibility of "the sole adult witness connecting the defendant with the charged acts"].)[7]

Thus, in summary, even if the evidence of Castro's receipt of a free smog test from Domac the day after these crimes could be considered "new" for purposes of section 1181, subdivision (8), defendant has nonetheless failed to demonstrate that admission of this evidence would likely have led to a different result.  Under these circumstances, the trial court acted well within the scope of its broad discretion in finding that the proffered

---

[7]     Defendant also directs us to case law holding that, even in the absence of a defendant's due diligence in discovering new evidence, "a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant."  (*People v. Martinez* (1984) 36 Cal.3d 816, 823 [new trial should have been granted where the proffered new evidence "reopens the critical gap in the prosecution's chain of proof. If the jurors even found a reasonable possibility that [the newly proffered] testimony was true, it is unlikely that they would find defendant's guilt proved beyond a reasonable doubt"]; see also *People v. Soojian, supra*, 190 Cal.App.4th at p. 516 ["[*People v.*] *Martinez* is a very limited exception to the general diligence requirement found in section 1181"].)  However, for all the reasons we just explained, we are not convinced in this case the evidence regarding Castro's receipt of a free smog test meets this high standard.  Simply put, the evidence does not "directly contradict" Castro's trial testimony, whatever its strength in proving defendant's guilt.

new evidence lacked sufficient materiality to affect the outcome of this case on retrial. (See *People v. Delgado, supra*, 5 Cal.4th at p. 328.)

Accordingly, the trial court's decision to deny defendant's new trial motion must be affirmed.

**DISPOSITION**

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.