Filed 11/21/25  P. v. Reis CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL BORGES DOS REIS,<br><br>        Defendant and Appellant. | A171185<br><br>(Alameda County<br>Super. Ct. No. 19CR011497) |

A jury convicted defendant Rafael Borges Dos Reis of committing two sex offenses against Jane Doe, the defendant's young niece.  Pursuant to a prior appeal, this court vacated the judgment and remanded the matter for the trial court to conduct an evidentiary hearing to assess defendant's newly discovered evidence.  (*People v. Rafael B.D.R.* (2024) 101 Cal.App.5th 385 (*B.D.R. I*).)  In 2024, the court held an evidentiary hearing and denied defendant's new trial motion.  We affirm.

## BACKGROUND

The incident that led to charges being filed against defendant occurred in September 2018 and was first reported to police in July 2019.[1]  Thereafter,

---

[1]  In their respective briefs the parties quote lengthy passages from the background summary in *B.D.F. I*, *supra*, 101 Cal.App.5th at pp. 388-395.  We do not adopt that approach, but our prior opinion is part of the appellate record, and we take many of our background facts from it.

1

defendant was charged with committing the following offenses against Jane Doe: willful commission of a lewd act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)), and sending or exhibiting harmful matter to a minor (*id.*, § 288.2, subd. (a)(2)).[2] Defendant was taken into custody but then released on bond pending trial.

### *The Jury Trial*

Defendant's trial was held in November and December 2022. The People called two witnesses, Jane Doe, who was 15 at the time of trial, and her 19-year-old sister, Melissa.

Melissa testified first, recounting what she could recall about a conversation that she had with Jane in September 2018, when Jane was 11. During the conversation, Jane was crying and upset. She told Melissa about an incident that occurred the previous night at their aunt and uncle's apartment, while their aunt Elizabeth was out and Jane was helping defendant take care of the couple's children. Jane told Melissa that she had gone into her aunt and uncle's bedroom to go to sleep, and, at some point, defendant came into the room. He lay in the bed with Jane and made her uncomfortable by showing her an inappropriate video, talking to her about sex, touching her leg, and asking her to cuddle with him.

Melissa testified that at some point during her conversation with Jane, she realized that she would have to tell someone about defendant's conduct, so she started recording the conversation on her phone. The audio did not describe abusive conduct, but it captured Jane crying and sounding very upset as she made statements such as: " 'I am so scared. I don't know what to do. I don't want to see him. I am so upset.' "

---

[2] Statutory references are to the Penal Code, unless otherwise indicated.

Jane's testimony about the incident was largely consistent with Melissa's testimony. She provided additional details, but there were things she could not remember. She testified that she had planned to sleep at her aunt and uncle's apartment, which was in the same building as hers, because Elizabeth was going to be out late. Defendant arrived home at around 10:00 p.m., and at some point, Jane went to lie down on the bed in Elizabeth and defendant's room. Defendant came in and lay down next to her. Jane remembered that defendant was wearing underwear, but could not recall if he wore anything else or what she was wearing. Defendant talked about himself, asked if Jane had a boyfriend, and asked if she wanted to cuddle. She said she did not. Then he showed her a video of people having sex, and asked if she wanted to do something similar with him but with their clothes on, and she said no. At some point, he touched her stomach as well as her leg. Then he left to sleep on the couch.

Defendant did not call any witnesses at trial. His trial counsel had proposed to call two other family members as witnesses, ostensibly to support the defense theory that Jane Doe made up a story about defendant at the behest of her mother Janeth, who harbored personal animus toward defendant. According to defense counsel's offer of proof, defendant's 12 year-old son, John Doe, would testify that Janeth asked him to tell police that defendant had touched him in " 'inappropriate places,' " which was not true. The other proposed witness, Jane Doe's maternal grandmother, would testify that Janeth asked her to tell police that Jane's behavior toward defendant changed after September 2018, which was not true. The trial court found the proposed testimony was potentially relevant but excluded it pursuant to Evidence Code section 352.

3

During closing arguments to the jury, both sides focused on the credibility of Jane and her sister. The prosecutor argued the girls were credible witnesses, and there was no evidence Jane had any motivation to lie about what happened. The defense argued that the prosecution's case depended on the credibility of both girls, and that Jane had not been honest about what happened.

On December 8, 2022, the jury found defendant guilty of both charges. In a bifurcated proceeding, the court found that the People proved two aggravating factors alleged in the information: the victim was particularly vulnerable; and defendant took advantage of a position of trust or confidence. (Cal. Rules of Court, rule 4.421(a)(3), (a)(11).) Defendant remained out of custody pending sentencing, pursuant to a previously posted bond.

### The New Trial Motion

Prior to sentencing, defendant filed a motion for new trial based on newly discovered evidence. (§ 1181, subd. (8).) According to the motion, on January 4, 2023, defense counsel received an email from defendant's ex-wife Elizabeth, who had not participated in or been present at defendant's trial. Counsel represented that the email, which was written in Spanish, disclosed that Elizabeth had intentionally set out on a plan to have defendant deported "with the goal of getting him out of her life," and when counsel followed up with Elizabeth, she disclosed material evidence that was later summarized in the declaration attached to defendant's new trial motion.[3]

---

[3] While this appeal was pending, defendant filed unopposed requests that we take judicial notice of (1) an English translation of the email exchange between Elizabeth and defendant's trial counsel; and (2) the respondent's brief that the People filed in *B.D.R. I.* The first request is granted, but the second, regarding a previously filed brief, is denied because only relevant evidence may be judicially noticed. (*People v. Curl* (2009) 46 Cal.4th 339, 360, fn.16.)

4

### *Elizabeth's Declaration*

In her declaration, Elizabeth described herself as "the ex-wife" of defendant. She stated that she sent her email to defendant's counsel because she could no longer bear having the "burden of guilt" on her conscience. She had thought that getting divorced would make her feel better but realized she "needed to tell the truth" to feel good about herself. Elizabeth represented that she would repeat the truth in her declaration, which was signed under penalty of perjury on January 17, 2023.

Elizabeth stated that she and her sister Janeth were angry at defendant for verbally mistreating Elizabeth, her kids, and her nieces and nephews. Janeth and Elizabeth both thought Elizabeth should divorce defendant, but Elizabeth was afraid to do it. So the sisters devised a plan, which Elizabeth described as follows: "Janeth and I thought we're going to say that he committed a crime so that he would go to jail and be deported. That way I wouldn't care about getting divorced and I wouldn't be with him anymore. He would be far away where he wouldn't bother or yell at me anymore." Elizabeth stated that she and Janeth decided the crime had to be child molestation, and they considered using various children in the family to make a false accusation, including Melissa. But after training Melissa for two months, they felt that would not be "enough" to get defendant deported. Then Janeth suggested using Jane Doe because they had a recording of Jane that was made after defendant yelled at her and she ran out of the house, which Janeth said could be used as "proof he molested her."

Elizabeth declared that she and Janeth trained Jane Doe to say that defendant showed her porn and masturbated on her, but Jane was confused about what masturbation means, which worried Elizabeth because they had explained to Jane that she needed to tell the police everything they had

discussed.  Two weeks later, Jane gave her police report and did not say defendant masturbated.  Defendant was arrested but when he was released the next day Elizabeth realized that their plan had not worked.  So she "distanced" herself from Janeth "for a while" because she had to show defendant that she was "on his side, so he wouldn't find out that [she] was involved."  Then defendant told Elizabeth that his lawyer had learned that Melissa told the police that Janeth had a plan to use the defendant's children against him "but it was very difficult."  After learning about Melissa's police report, Elizabeth "completely distanced" herself from Janeth because she thought the plan had not worked and she was afraid that defendant would find out she was part of the plan.

### The January 2023 hearing and Orders

On January 24, 2023, the trial court held defendant's sentencing hearing.  As a preliminary matter, the court heard argument and ruled on defendant's new trial motion without conducting an evidentiary hearing.  The court reasoned that it had sufficient information to rule on the matter because it would assume that Elizabeth would testify consistently with her declaration.  Then the court denied the new trial motion, giving three reasons:  Elizabeth's declaration did not " 'necessarily' " constitute new evidence because it pertained to a theory the defense pursued at trial; it was not likely that a different outcome would be reached if Elizabeth testified at a retrial because the prosecution witnesses were so compelling; and the evidence disclosed in Elizabeth's declaration could have been discovered sooner, given her relationship to defendant.

Following the denial of his new trial motion, defendant was sentenced to a six-year prison term, which consisted of a midterm sentence for the lewd

6

conduct conviction and a concurrent two-year term for sending harmful matter to a minor.

### B.D.R. I

In April 2024, this court vacated the judgment and the order denying defendant a new trial and remanded the matter to the trial court with directions to rehear the new trial motion. (*B.D.R. I*, *supra*, 101 Cal.App.5th at p. 400.) We reached this disposition after finding flaws in the trial court's reasons for denying the motion. First, the court mistakenly assumed that evidence in the declaration was not new unless it supported a new theory; to the extent Elizabeth's declaration contradicted the strongest evidence against the defendant, it was new evidence. (*Id*. at p. 396; see § 1181, subd. 8; *People v. Martinez* (1984) 36 Cal.3d 816, 823.) Second, the finding that defendant could have discovered the evidence sooner was not supported by the limited record before the court at that juncture, which consisted of a declaration attesting that Elizabeth withheld the evidence from defendant. (*B.D.R. I*, at p. 396.) Finally and crucially, the court's determination that Elizabeth's testimony would not change the outcome was, at bottom, a finding that Elizabeth was less credible than the prosecution witnesses who testified at trial, and yet the court did not have sufficient information to assess Elizabeth's credibility based on her sworn declaration alone. (*Id*. at pp. 396–397.) Under those circumstances, we concluded the court "abused its discretion in denying defendant's new trial motion without first holding an evidentiary hearing that would enable it more clearly to assess the new evidence." (*Id*. at p. 399.)

### The Present Appeal

Following remand, the trial court held hearings to discuss issues pertaining to the pending new trial motion, and then set an evidentiary

hearing for August 5. Defendant chose to appear at the hearing via video from prison. Each side offered an exhibit that was admitted into evidence: defendant relied on a transcript of the January 2023 sentencing hearing at which his new trial motion was erroneously denied; and the People submitted Elizabeth's declaration. The court also heard testimony from three witnesses. The defense called Elizabeth, and then the People called Elizabeth's sister, Janeth, and Janeth's daughter, Jane Doe.

### Elizabeth

During Elizabeth's direct testimony, defendant's counsel asked about facts that were recounted in her declaration. Elizabeth testified that she believed her divorce from defendant was final or almost final as she had started that process a year or more before the evidentiary hearing. Defense counsel asked Elizabeth if defendant had mistreated her, to which she responded that they had a difficult relationship. She went on to acknowledge that there were frequent, intense arguments, but she testified that defendant had a good relationship with the couple's three children and with her older son. As for her relationship with her sister Janeth, Elizabeth testified they were close before Jane Doe made her allegations against defendant. They discussed problems in Elizabeth's marriage and they also talked about the possibility of Elizabeth getting a divorce, although that was not a "frequent" topic. Elizabeth had been afraid to start the divorce process, but testified that she did not know why she had that fear.

In response to a question from defense counsel, Elizabeth confirmed that she and Janeth agreed to try to falsely accuse defendant of a crime, and when asked why they made the agreement, Elizabeth responded: "Because if that would happen, then he won't be close to us." Elizabeth confirmed that she previously believed that if defendant was accused or convicted of a crime,

8

that would contribute to him being deported, which was something she wanted at the time. Elizabeth testified that she and Janeth agreed that the type of crime would involve "Harassment towards the child." Defense counsel asked if what Elizabeth meant by her testimony was that the accusation would be "sexual misconduct towards the child," and Elizabeth answered "Yes." The sisters considered various family members who could be the child. Initially, they considered Elizabeth's oldest son, but that plan was abandoned because of his close relationship to defendant. Then they considered using Melissa. Elizabeth could not remember Melissa's reaction when they "talked a little with her" about their plan, nor could she remember why they switched from Melissa to Jane Doe.

Elizabeth also agreed with defense counsel's suggestion that she and Janeth "work[ed] together to coach Jane Doe to make a false allegation of a sexual nature against [defendant]." But she did not remember what they coached Jane Doe to say until defense counsel used the email that Elizabeth had sent to defendant's trial counsel to refresh Elizabeth's recollection. She then recalled that she and Janeth coached Jane to say that defendant was "close to her masturbating," and if she did not know what that meant not to worry, as she could just say it was dark, and she did not know what he was doing. Elizabeth was vague about the nature of these coaching sessions, testifying that the first time they talked with Jane together and then they talked with her separately. The coaching of Jane did not go on "for long," Elizabeth testified.

Elizabeth testified that she was present when the police were contacted and came to take a report from Jane Doe. After Jane's allegations were reported to the police, defendant was arrested, and after "sometime" he was released. Elizabeth testified that following these events she remained "[a]

9

little" close to Janeth, but "it wasn't the same anymore," and Elizabeth did not know why. Elizabeth testified that she did not "view" defendant's trial, but she became aware of his convictions, and after that she contacted his attorney. When asked about the timing of her disclosure, Elizabeth testified that she had thought that things would be easier and she would be okay because defendant was convicted. But she realized that "it was affecting [her] a lot," and she was not okay because she "had that remorse." Nobody told her to write the email that she sent defense counsel; she "just thought it was the best way." After defendant went to prison, Elizabeth stayed in contact with him by telephone because they have children together. She also visited him in prison because she needed to "speak with him about some issues." For example, a car she used to drive was taken away from her and she went to ask defendant why. She also wanted his consent to travel abroad with the children, but he refused to give it. Elizabeth testified that she did not intend to resume a romantic relationship with defendant.

Under cross-examination, Elizabeth testified that she first told defendant she wanted to divorce him at the same time that she filed for divorce, which was in December 2022. Elizabeth admitted that defendant was not in custody at that time, but it was not clear from her testimony whether she asked for a divorce before or after defendant was convicted. Elizabeth testified that her fear about filing for divorce had disappeared because she "didn't care anymore" about the outcome of the case and she was feeling "stronger and able to be alone." The prosecutor asked Elizabeth why she did not also come forward about the alleged plot in December 2022, if she no longer needed for defendant to be incarcerated or deported and did not care about the outcome of the case. Elizabeth testified she did not know why she continued to keep the alleged lie a secret. The prosecutor pressed for an

explanation, asking specifically why Elizabeth waited until after defendant was found guilty before she came forward with her version of the truth. Elizabeth responded that she "started feeling bad about it," and just "wasn't feeling okay about it."

Elizabeth affirmed that her plan to falsely accuse defendant was motivated by her desire for defendant to go to prison so that he would not be close to her or her children. But she also admitted that she had "consistent communication" with defendant while he was in prison. She had spoken to him on the phone "hundreds of times," and made three-hour trips to visit him in person between six and nine times. Elizabeth testified that "of course" she would maintain contact with defendant, because she felt that was the best thing for her children. She testified that the children needed to talk to their father. Also, she needed to see him "face-to-face" because she had "a lot of issues" she needed to discuss with him. When asked why her visits with defendant were "hours and hours long," Elizabeth responded that defendant is "not a very easy person to convince," and she needed to talk to him "constantly" so that he would do things for her.

During cross-examination, Elizabeth also acknowledged that after Jane Doe made her police report and defendant was released from jail, she and defendant were still together and still married. She testified that she distanced herself from Janeth at that point because she was "not doing well mentally." When reminded of her declaration, Elizabeth agreed that she also distanced herself from Janeth because she was afraid defendant would find out about their plot. However, she also admitted that, during that same pretrial period, she asked Janeth to have the charges against defendant dropped. Elizabeth did that because she "was not feeling okay about the

11

situation and [she] didn't want to carry on" with the lie, but she also did not want to reveal their plot.

Elizabeth could not explain why Janeth or Jane Doe would continue to pursue the allegedly false allegations against defendant if they were doing it only to help Elizabeth, and yet Elizabeth and defendant were still together. Nor could she explain why she was willing to put Jane Doe through such a traumatic experience, other than by testifying repeatedly that she was not okay at the time, and had not thought about how her ill-conceived plan would "affect any other people."

Elizabeth testified that she never told defendant anything about the plot that she and Janeth devised. She also denied having conversations about this case with defendant before she sent her email to defense counsel. However, she was impeached with her declaration, and acknowledged that she and defendant had discussed some of the defense evidence. She also admitted knowing about defendant's attempt to use her 10-year-old son as a witness. Despite knowing about these events, Elizabeth did not disclose her alleged lie before the jury returned guilty verdicts because she "wasn't thinking things through."

### *Janeth*

Janeth testified that she was not on speaking terms with Elizabeth. They stopped talking after the "situation" with Jane Doe happened, but they still lived in the same building. Janeth testified that prior to the incident with Jane Doe, she was not aware that Elizabeth and defendant had problems in their marriage. Defendant seemed like a good person, Janeth recalled, except that she counted herself among family and neighbors who did not like the way defendant treated his children. He yelled at them, punished them, and hit them for no reason, she testified. When Janeth was still close

12

with Elizabeth, she told her sister to put a stop to defendant's treatment of the children, but she never recommended leaving him.

Janeth testified that in the summer of 2019, she learned for the first time that defendant had molested Jane Doe. She told Elizabeth, who was mad and sad, and "supportive" of Jane Doe until defendant got released from jail pending trial. After that, Elizabeth distanced herself and Janeth never again discussed the case with her or talked to her about what happened to Jane Doe. But they had one conversation when Elizabeth came to Janeth with a proposal to drop the charges against defendant, saying that if the charges were dropped, they would move far away from the family.

Janeth testified that she and Elizabeth did not make up the molestation to get defendant in trouble. Before the police came to her home to take a statement from Jane Doe, Janeth did not ever tell Jane what to say to the police or try to convince Jane to lie to the police. Nor did she ever see Elizabeth tell Jane what to say, or try to convince Jane to lie. Janeth acknowledged under cross-examination that she did not want Jane Doe to have to testify at another trial and she did not want to go through that experience again either.

### *Jane Doe*

Jane Doe testified that before she talked to the police about her allegations against defendant, nobody told her what to say. Neither Janeth nor Elizabeth ever told Jane Doe what to say to the police or in court, nor did they tell her to lie. Jane Doe testified that she told the truth about what happened with defendant when she talked to the police and to the court liaison, and when she testified in court. She also testified that nobody in her family ever told her to lie to get defendant in trouble, and she would never do that. Jane recalled that when she first talked to the police about the

13

incident, Elizabeth was supportive of her and encouraging of her. But that changed at some point, and they stopped talking before Jane Doe testified at trial.

### The Trial Court's Rulings

After the parties presented argument and the matter was submitted, the court took a brief recess before returning to the record to announce its decision. There were three main parts to the court's lengthy ruling: It highlighted discrepancies in Elizabeth's accounts of what happened; it made an express finding that Elizabeth was not a credible witness; and then it denied defendant's request for a new trial.

### Discrepancies in Elizabeth's Testimony

The court's first example of a discrepancy or ambiguity in Elizabeth's testimony pertained to her marital status. The court observed that Elizabeth's marital status was relevant to her true sentiments towards defendant, and yet she did not clearly answer whether they were actually divorced or what her marital status had been when she "authorized the original declaration." The court also focused on conflicting testimony about defendant's relationship with the children. For the court, this aspect of Elizabeth's testimony was a "huge discrepancy" because the goal of the alleged plan to falsely accuse defendant had been to get him away from the children, but years later she continued to keep in contact with him and to believe the children needed to be in contact with him as well.

The court mentioned other statements by Elizabeth, highlighting questions she was unable to answer. Elizabeth testified the coaching did not go on for long, whereas her declaration indicated it had gone on for months. Also, she was unable to explain why her relationship with Janeth changed after the police report and arrest. And the court was "struck by the number

14

of times" Elizabeth answered a question only by stating that she was not " 'doing well,' " noting she often gave that response during cross-examination when she was pressed about an inconsistency.

The court also expressed concern about the timing of Elizabeth's disclosure. With the benefit of the evidentiary hearing, the court came to understand the significance of this factor because when Elizabeth sent her email, defendant had been convicted but was still out of custody. Elizabeth had explained in her declaration that she waited so long to come forward out of fear that defendant would find out about her deceit, but her testimony offered no explanation as to why this fear disappeared after defendant was convicted but remained out of custody.

The plot that Elizabeth described also raised a "compelling question" as to why Janeth would participate in it. If this was a "falsified plot," and none of the allegations were true, there was no explanation why Janeth would allow her children to be dragged through the trial, or to have Jane Doe come back and be subject to examination again at the evidentiary hearing, the court observed.

### Elizabeth's Credibility

The court made an express finding that Elizabeth's testimony at the evidentiary hearing was not credible. In this regard, the court clarified for the record that its discussion of discrepancies in Elizabeth's story were only examples. The court added that Elizabeth's demeanor was noteworthy and relevant. She acted displeased from the moment she appeared in the courtroom and "her demeanor definitely changed between direct exam and cross-examination." In assessing credibility, the court also considered the evidentiary hearing testimony from Janeth and Jane Doe, noting that the hearing afforded the court its first opportunity to hear from Janeth.

15

### *Denial of the Defendant's Request for a New Trial*

Ultimately, the court denied defendant's motion for a new trial, summarizing its rulings as follows: "I find that Elizabeth . . . has perjured herself to help [defendant].  I also find that this evidentiary hearing has enabled me to more clearly assess the proffered new evidence.  And it is particularly helpful to hear from Jane Doe and [Janeth], who both refute the truth of the proffered new evidence.  [¶]  Based on all of that, the Court finds that if this new evidence were admitted at a retrial, it would not render a different result probable.  [¶]  For those reasons and the reasons state[d] in the previous ruling that the Court of Appeal has already addressed, the motion for new trial is denied."

## DISCUSSION

A new trial may be granted based on newly discovered evidence material to the defense which the defendant could not with reasonable diligence have discovered and presented at trial.  (§ 1181, subd. (8).)  The " 'central question' " presented by such a motion is whether the newly discovered evidence " 'would probably result in a different verdict upon retrial.' "  (*B.D.R. I*, *supra*, 101 Cal.App.5th at p. 395.)  " 'We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard.' "  (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)  The ruling will not be disturbed on appeal unless error was manifest and unmistakable.  (*Ibid*.)

We find the trial court did not abuse its discretion in denying defendant's motion after conducting an evidentiary hearing to assess defendant's new evidence.  In contrast to the prior ruling on defendant's motion, which was based on Elizabeth's declaration alone, this time the court had the opportunity to consider testimony from Elizabeth, Janeth and Jane

16

regarding the alleged plot that defendant relies on as the basis for seeking a new trial. We have no trouble concluding that the testimony of these witnesses constitutes substantial evidence supporting the court's findings that Elizabeth was not a credible witness and that she perjured herself in an effort to assist defendant. (See, e.g., *People v. Drake* (1992) 6 Cal.App.4th 92, 97 ["trial court's factual findings, express or implied, made on a motion for new trial will be upheld if supported by substantial evidence"].) And in light of these well-supported findings, the court concluded reasonably that it is not likely defendant would obtain a more favorable verdict if Elizabeth were to testify at a retrial.

The trial court focused on discrepancies in Elizabeth's testimony, as we have already discussed. We note a few other problems, again only examples. During her testimony, Elizabeth required repeated prompting and displayed a remarkable inability to recall the allegedly true facts set forth in her declaration. She could not even recall what she and Janeth allegedly coached Jane Doe to lie about until after defense counsel showed her the email that she allegedly sent to defendant's trial counsel. In her declaration, Elizabeth stated that she and her sister coached Jane to falsely accuse defendant of masturbating next to her, and implied that although Jane did not say exactly that, she did lie about what defendant did that night. Yet, when Elizabeth testified at the evidentiary hearing, she did not claim Jane Doe had actually lied about anything, but only that Jane did not tell the police that defendant had masturbated, which would have been a lie.

In contrast to the many problems with Elizabeth's testimony, Janeth and Jane Doe testified unequivocally that Janeth and Elizabeth did not coach Jane Doe to lie and that Jane Doe did not in fact lie. The trial court appropriately considered this apparently persuasive evidence in assessing

17

Elizabeth's vague and evasive testimony about the alleged coaching. The trial court also appropriately relied on Elizabeth's demeanor, which noticeably changed when she was subject to cross-examination, and the fact that throughout her testimony she gave nonresponsive answers to material questions. " '[T]he trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' " (*People v. Delgado* (1993) 5 Cal.4th 312, 329.) Now that an evidentiary hearing has been conducted, the court's assessment of Elizabeth's lack of credibility is supported by the record.

On appeal, defendant offers two types of arguments in support of his contention that the trial court abused its discretion. First, he argues that the court failed to comply with this court's remand directions. We completely disagree. We vacated the judgment with one direction: for the court to hold an evidentiary hearing in order to properly assess the credibility of Elizabeth and the evidence contained in her declaration. The court fully complied with our direction, and the evidentiary hearing fully supports its ruling. Relatedly, defendant posits incorrectly that this court made findings about the evidence which constitute the law of the case and preclude the People from challenging Elizabeth's veracity. We did no such thing. Our entire point was that the court lacked sufficient information to conduct a proper assessment of Elizabeth's declaration. That error has now been corrected.

Defendant's remaining arguments attempt to show that the trial court abused its discretion by finding that Elizabeth's testimony was inconsistent with her declaration. We are not persuaded. Standing alone, Elizabeth's declaration created a likelihood that her newly disclosed information was material evidence. That likelihood no longer exists in light of the additional

18

information elicited at the evidentiary hearing, including but not limited to Elizabeth's own testimony. On many issues, Elizabeth's testimony was deficient. Most importantly, she failed to explain why Janeth would force her own children to participate in a plot that Elizabeth herself had sought to abandon before trial. In other respects, Elizabeth's testimony was decisively contrary to defendant's effort to obtain a new trial. For example, Elizabeth admitted that when she came forward with her declaration, defendant was not in custody, and that after he went to prison, she stayed in constant contact with him. Finally, the trial court has now had the opportunity to assess the credibility of Elizabeth and Janeth, who both testified under oath at the evidentiary hearing, and to further consider the credibility of Jane Doe.

For all these reasons, we conclude that the trial court's finding that Elizabeth perjured herself is supported by substantial evidence and, on this record, the court did not abuse its discretion in finding that it is not likely Elizabeth's new evidence would lead to a different verdict if the case was retried.

## DISPOSITION

The judgment is affirmed.

TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*People v. Borges Dos Reis*  (A171185)

19